IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| IN THE MATTER OF: | ) | CASE NO. BK10-83693-TJM |
| | ) | |
| GREGG ALAN CARSTENS and | ) | CH. 13 |
| JULIE MAE CARSTENS, | ) | |
| | ) | |
| Debtor(s). | ) | |

## ORDER

Hearing was held in Omaha, Nebraska, on February 22, 2011, regarding Filing #13, Motion for Relief from Stay, filed by First National Bank of Omaha, Filing #22, Resistance, filed by Gregg Carstens, and Filing #26, Resistance, filed by Gilbert Carstens and Dolores Carstens. John Turco appeared for the debtors, Matthew Eck appeared for First National Bank of Omaha, and Michael Kratville appeared for Gilbert and Dolores Carstens.

The debtors, Gregg and Julie Carstens, filed their Chapter 13 petition on December 23, 2010. Prior to that date, they had entered into an agreement with First National Bank for a line of credit account. On the petition date the debtors still owed the bank $18,371.38 on the line of credit.

On January 31, 1995, Gilbert Carstens and Dolores Carstens, parents of Gregg Carstens, along with Gregg Carstens, signed a signature card with regard to a Money Market Deposit Account at the bank. The bank asserts that the account was opened as a multiple-party account with right of survivorship. It further asserts that each of the three are listed as the owners of the account and none of the three is designated as an agent. Language contained in the signature card states that all of those signing agree to be bound by all regulations of the bank, acknowledge receipt of the Deposit Agreement Disclosures, and agree to be bound by the terms thereof.

On the petition date there was $35,154.09 in the Money Market Account. Upon receipt of notice of the bankruptcy filing by Gregg Carstens, the bank froze the account and released to Gilbert and Dolores Carstens only that amount of the funds that exceeded the $18,371.38 owed by Gregg Carstens to the bank. The bank then moved for relief from the automatic stay to obtain an order permitting it to setoff the remaining amount in the account against the remaining debt of Gregg Carstens. Gregg Carstens objected to the motion for relief on the grounds that he simply signed the signature card as agent for his parents and neither he nor they had any intent to make him an owner of the funds in the account. Further, he has never contributed any funds to the account, nor withdrawn any funds from the account.

The senior Carstens objected on basically the same grounds.

At the hearing on the motion, the bank offered the affidavit of Melvin C. Buchele, an Operations Officer/Vice President for First National Bank of Omaha, as a person familiar with the business records maintained by First National concerning the accounts of Gregg and Julie Carstens and concerning accounts of Gilbert and Dolores Carstens, Filing 33. That affidavit was admitted over objection to foundation and hearsay. In it, at paragraph 1, Mr. Buchele asserts that the records he refers to "were made at or near the time by, or from information provided by, persons with knowledge of the activities and transactions reflected in such records, and are kept in the ordinary course of business activity conducted regularly by First National. It is the regular practice of First National to make these records. In connection with making this affidavit, I have acquired personal

knowledge of the matters stated herein by personally examining these business records."

Attached to the affidavit is a copy of both sides of the signature card which does show that it is a "multiple party with right of survivorship" account. Also attached is a document, Exhibit C, which Mr. Buchele identified as the Consumer Deposit Agreement that governs the account.

Exhibit C, which purports to be the deposit agreement that governs the account, shows no signature of any of the Carstens, nor for that matter does it show a signature of a representative of the bank. The account was opened in January of 1995, and the deposit agreement which is filed as Exhibit C to Mr. Buchele's affidavit clearly was not in existence in 1995. The first paragraph of Exhibit C states, "To help the government fight the funding of terrorism and money-laundering activities, the USA Patriot Act requires all financial institutions to obtain, verify and record information that identifies each person who opens an account." The USA Patriot Act was passed in October 2001.

Counsel for the bank admitted on questioning that Exhibit C is not the actual deposit agreement entered into by the Carstens. Apparently the electronic record system that Mr. Buchele relies upon for his testimony does not retain all of the documents related to accounts opened as far back as 1995. However, counsel argues that the deposit agreement is basically the same as the 1995 document and that, even if it is different from the 1995 document, the agreement itself allows the bank to unilaterally change the terms without giving notice to the account holders.

In September of 1993, approximately a year and a half prior to the opening of the account, the Nebraska legislature passed §§ 30-2715 through 30-2746, concerning non-probate transfer of accounts. For the sections dealing with multiple-person accounts, certain terms are defined in § 30-2716. An agent is a person authorized to make account transactions for a party. Neb. Rev. Stat. § 30-2716(2). A party is identified as a person who, by the terms of an account, has a present right, subject to request, to payment from the account other than as a beneficiary or agent. Neb. Rev. Stat. § 30-2716(6). A multiple-party account is defined as an account payable on request to one or more of two or more parties, whether or not a right of survivorship is mentioned. Neb. Rev. Stat. § 30-2716(5).

The legislature made clear that all personal accounts then in existence and thereafter opened are subject to the statutory provisions:

> An account established before, on, or after September 9, 1993, whether in the form prescribed in section 30-2719 or in any other form, is either a single-party account or a multiple-party account, with or without right of survivorship, and with or without a POD designation or an agency designation, within the meaning of sections 30-2716 to 30-2733, and is governed by such sections.

Neb. Rev. Stat. § 30-2718(b).

The statutes also set out the approved form for a contract of deposit, with the idea that compliance with the form will most clearly demonstrate the depositor's intent as to the type of account he wishes to establish:

> A contract of deposit that contains provisions in substantially the form provided in this subsection establishes the type of account provided, and the

      account is governed by the provisions of sections 30-2716 to 30-2733 applicable to an account of that type.

Neb. Rev. Stat. § 30-2719(a).

      The form then provides for the name of the parties and the type of ownership as single-party or multiple-party. The form states: "Parties own account in proportion to net contributions unless there is clear and convincing evidence of a different intent." Id.

      The next section of the form offers a choice for rights at death, such as multiple-party account with right of survivorship. Id. Following that is a section for designating an agent by name. Id.

      If a contract of deposit does not substantially correspond to the form described above, then it is governed by the provisions of sections 30-2716 to 30-2733 that apply to the type of account that most nearly conforms to the depositor's intent. Neb. Rev. Stat. § 30-2719(b).

      Section 30-2722 discusses ownership of an account during the lifetime of the parties. Subsection (b) of that section provides: "During the lifetime of all parties, an account belongs to the parties in proportion to the net contribution of each to the sums on deposit, unless there is clear and convincing evidence of a different intent. . . . "

      Finally, § 30-2733 provides for the right of setoff. It reads:

      Without qualifying any other statutory right to setoff or lien and subject to any contractual provision, if a party is indebted to a financial institution, the financial institution has a right to setoff against the account. The amount of the account subject to setoff is the proportion to which the party is, or immediately before death was, beneficially entitled under section 30-2722 or, in the absence of proof of that proportion, an equal share with all parties.

      The bank's position is that the signature card substantially conforms to the form at § 30-2719(a) because it identifies the names of the parties to the account, identifies it as a multiple-party account, and specifically provides for rights of survivorship. However, it does not provide any opportunity for a person to be named as agent, rather than party.

      It is further the bank's position that the intent of the Carstens at the time the account was opened does not matter because the deposit agreement at ¶ 16 of the general terms permits the bank to setoff the funds in any account owned by a party against any debt owed by that party. Therefore, from the bank's point of view, even if it is true that Gregg Carstens never deposited any money into the account, his ownership interest as defined in § 30-2722(b) as his net contribution to the account in the statutory setoff provision of § 30-2733 simply does not apply. Instead, the terms of the deposit agreement apply, giving the bank the right to setoff the amount on deposit against his debt because he is an owner of the account.

      I find as a fact that the signature card signed by the Carstens a year and a half after the passage of the statutory provisions discussed above does not substantially conform to the form prescribed in § 30-2719. It is not in the format of the statutory form. It does not state that the signatories are all owners. It does not provide a line to name a person as an agent rather than a

party. The statute went into effect more than a year prior to the account being opened. The bank obviously did not update its forms to comply with the statute.

I further find that the bank's assertion that the deposit agreement entered into by the Carstens at the time they opened the account is substantially similar to the deposit agreement attached to Mr. Buchele's affidavit as Exhibit C is not convincing. Mr. Buchele's affidavit does not inform that the document is substantially the same as the document that covered the account in 1995. He could not, apparently, testify as to that fact because the bank does not have the original or an electronic version of the original deposit agreement. Further, it has presented no deposit agreement with the signature of any or all of the Carstens. The bank has the burden of proof and without any evidence of the deposit agreement that is the contract between it and the Carstens, it has failed to meet its burden.

From the evidence presented by the Carstens, I conclude that it was their intent, at the time the account was opened and thereafter, that the senior Carstens were the owners of all of the money in the account and that Gregg Carstens was not intended to be an owner of the account or any of the money in the account. I further find that Gregg Carstens signed the signature card with the understanding that he could have access to the funds if necessary to help his parents if they were unable to handle their own financial affairs.

I conclude, in the absence of an enforceable deposit agreement which would override the statutory setoff provision, that the bank does not have a right to setoff funds in the account against the debt owed by Gregg Carstens.

IT IS ORDERED that First National Bank of Omaha's motion for relief from the automatic stay, Filing #13, is denied.

DATED:       March 10, 2011

BY THE COURT:

/s/ Timothy J. Mahoney
United States Bankruptcy Judge

Notice given by the Court to:
    John Turco
    *Matthew Eck
    Michael Kratville
    Kathleen Laughlin
    U.S. Trustee

Movant (*) is responsible for giving notice to other parties if required by rule or statute.